# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER VERTICELLI, : | |
| *Plaintiff*, : | |
| : | |
| v. : | CIVIL ACTION NO. 25-CV-1463 |
| : | |
| COMMONWEALTH OF : | |
| PENNSYLVANIA, DEPARTMENT OF : | |
| CORRECTIONS, *et al.* : | |
| *Defendants*. : | |

## **MEMORANDUM**

**Pappert, J.**                                                                                         **May 15, 2025**

*Pro se* Plaintiff Christopher Verticelli, an incarcerated individual housed at SCI Phoenix, asserts constitutional claims pursuant to 42 U.S.C. § 1983 and associated state law claims in connection with an alleged assault by a corrections officer and the subsequent denial of mental healthcare. Verticelli also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Verticelli leave to proceed *in forma pauperis* and dismiss his Complaint, in part. Verticelli may file an amended complaint if he believes he can cure the defects in the claims dismissed without prejudice, or in the alternative, he may proceed on his claims that pass statutory screening.

I[1]

During the "morning count" on August 3, 2023, Defendant Lt. Randall entered Verticelli's cell to speak to his cellmate and then pointed his finger at the side of

---

[1] The factual allegations set forth in this Memorandum are taken from Verticelli's Complaint. (*See* ECF No. 1.) The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

Verticelli's face. (Compl. at 3.) When Verticelli asked Randall to stop, he responded, "let's go," grabbed Verticelli by both arms, and punched him in the chest. (*Id.* at 3-4.) As Randall pulled Verticelli out onto the pier, Verticelli asked why he was being "assaulted" and explained that he is a "handicap[ped] inmate with a bad hip and a severe brain tumor." (*Id.* at 4.) Randall ignored Verticelli's pleas and forcefully pushed him to the ground, causing Verticelli to hit the back of his head. (*Id.*) When Verticelli "came to," Randall was dragging him by the arms down the pier. (*Id.*) After dragging him about ten feet, Randall let go of Verticelli's arms and began screaming at him to "get up." (*Id.*) At that point, Verticelli was unable to get up or walk. (*Id.*) An unnamed correctional officer witnessed the incident and called for medical assistance. (*Id.*) Verticelli was then taken to "the medical facility" to be treated for what later turned out to be "life-long injuries." (*Id.* at 4, 5.)

At some point after the alleged assault, Verticelli requested to see someone from the mental health department at the prison, but that request was denied "for no apparent reason." (*Id.* at 4.) Verticelli states that he made numerous requests for mental healthcare services because he was "very unstable" and "having some serious issues" after the incident with Randall. (*Id.* at 6.) These requests were also denied, allegedly in violation of Pennsylvania Department of Corrections policy, which requires that mental healthcare services be available to inmates "24 hours a day" and that inmates "promptly [be] seen" upon request. (*Id.* at 6, 7.)

Three days after the incident, Verticelli filed a grievance against Randall, who allegedly has "repeatedly engaged in assaultive behavior" against inmates in the past. (*Id.* at 5.) Verticelli claims that his request to have witnesses interviewed in

conjunction with the grievance process was improperly denied. (*Id*. at 6.) He further states that after filing the grievance against Randall, DOC staff members confiscated and discarded his mail. (*Id*.)

In addition to Randall, Verticelli names as Defendants the DOC, Superintendent Terra, and Centurion, which he identifies as the mental healthcare provider at SCI Phoenix. (*Id*. at 3.) He asserts constitutional claims for excessive force, the denial of mental healthcare, and due process violations, and state law claims for assault and battery.[2] (*Id*. at 2, 7.) For relief, Verticelli requests money damages, a declaratory judgment, and an injunction. (*Id*. at 8.)

II

The Court will grant Verticelli leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the

---

[2] Verticelli also makes a passing reference to negligence. (*See* Compl. at 2.) He does not allege any facts in support of a negligence claim. To the extent that Verticelli intended to assert a negligence claim, he has failed to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Campbell v. LVNV Funding, LLC*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (explaining that "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other" (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).

[3] Because Verticelli is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 678 (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Verticelli is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III

Verticelli asserts constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A

The Eleventh Amendment bars suits against a state and its agencies, including the DOC, that seek monetary damages. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Moreover, the DOC is not considered a "person" for purposes of § 1983. *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983). Accordingly, Verticelli's claims against the DOC are not plausible and will be dismissed with prejudice.

B

Verticelli asserts Eighth Amendment excessive force claims, alleging that Lt. Randall assaulted him for no reason and that Superintendent Terra failed to prevent the assault despite knowledge of Randall's tendency towards violence against inmates. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment." *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the prisoner has plausibly alleged that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, No. 20-0687, 2020 WL

2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7). Verticelli alleges that when he asked Randall to stop pointing in his face, Lt. Randall punched him in the chest, dragged him down the hall by his arms, and "pushed" him "so hard" that it caused him to fall and hit the back of his head on the ground. (Compl. at 4.) As a result of the incident, Verticelli required medical care for the resulting injuries and requested mental health services. Verticelli has stated a sufficient basis to proceed with his excessive force claim, as well as the related state law assault and battery claims, against Randall. These claims will be served on Randall so he may respond to them.

As for Superintendent Terra, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she, "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom, which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Failure to" claims, such as a failure to train, failure to discipline, or failure to supervise, are generally considered a subcategory of policy or practice liability. *Id.* at 316-17. Verticelli alleges that several inmates had previously filed complaints and grievances against Randall for "abusive and assaultive conduct."

(Compl. at 5.) Verticelli also alleges that Superintendent Terra specifically knew about Randall's "pattern of physical abuse of inmates" but nevertheless failed to "take any disciplinary or other action to curb" it "to prevent the misuse of force," in violation of the Eighth Amendment. (Compl. at 7.) Viewing the allegations in the Complaint together, Verticelli has plausibly alleged an adequate basis to proceed on his Eighth Amendment supervisory liability claim against Superintendent Terra.

C

Verticelli also appears to assert a Fourteenth Amendment due process claim against Terra based on allegations that he refused Verticelli's request to interview witnesses in connection with his grievances. However, "[p]risoners do not have a constitutional right to prison grievance procedures." *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)); *see also Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) ("Insofar as Gerholt alleged a Due Process violation arising out of the handling of his grievance, the District Court correctly recognized that prisoners do not have a constitutional right to prison grievance procedures."); *Wilkins v. Wetzel*, No. 12-1152, 2013 WL 5504491, at *8 (W.D. Pa. Oct. 3, 2013) (dismissing due process claim based on the denial of the plaintiff's request for a personal interview in connection with the filing of his grievance). Verticelli's due process claim against Superintendent Terra are not plausible and will be dismissed with prejudice.

D

Verticelli also asserts Eighth Amendment denial of mental healthcare claims against Terra and Centurion. Verticelli's claims are based on allegations that he was

7

repeatedly denied requests for mental healthcare services after the incident with Randall. Verticelli's claims against both Defendants cannot proceed as pled.

To state a claim based on the failure to provide medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference claims can be based on the failure to provide adequate mental health services. *DeJesus v. Delaware through Delaware Dep't of Corr.*, 833 F. App'x 936, 940 (3d Cir. 2020) (citing *Palakovic v. Wetzel*, 854 F.3d 209, 227-29, 231-32 (3d Cir. 2017)); *see also Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979) (deliberate indifference is actionable "when inmates with serious mental ills are effectively prevented from being diagnosed and treated by qualified professionals").

Verticelli states that he was unstable after the incident with Lt. Randall and made numerous requests for mental healthcare services, but the requests were denied

without any reasons provided. Verticelli does not describe how Superintendent Terra or any other prison official was involved in the alleged denial of these services. *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."). Verticelli also does not allege that Terra was even aware that he requested mental health services. Assuming that Verticelli's medical need was serious, the facts do not support a reasonable inference that Superintendent Terra was deliberately indifferent to that need.[4] Nor is there any factual basis for a supervisory liability claim.

To plead a § 1983 claim against a prison medical provider such as Centurion, a plaintiff must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (*per curiam*) (stating that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability'"); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical

---

[4] If Verticelli wishes to name other individuals involved in the alleged denial of mental healthcare for whom he does not have any identifying information, he may refer to those individuals as John Doe #1, John Doe #2, Jane Doe #1, Jane Doe #2, etc.

9

needs." (citations and quotations omitted)).[5]  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  It is not enough, however, to allege the existence of a policy or a custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id*. (quoting *Bielevicz*, 915 F.2d at 850).

Verticelli's claim against Centurion must also be dismissed.  Nothing in the Complaint suggests that Verticelli's inability to acquire mental healthcare services resulted from a Centurion policy or custom.  Although Verticelli alleges that Centurion violated DOC policy requiring that mental healthcare services be available 24 hours a day and that an inmate be seen upon request, the policy itself did not cause the alleged constitutional harm.  In any event, violations of internal prison policies do not, by themselves, rise to the level of constitutional violations.  *See Washington v. Gilmore*,

---

[5] "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

A plaintiff may also state a basis for a liability against an entity like Centurion by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  In the context of a medical contractor, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019).

No. 22-2309, 2023 WL 4363113, at *2 (3d Cir. July 6, 2023) (*per curiam*) (stating that "violation of prison policy is not, in itself, a constitutional violation"); *Bullard v. Seism*, 449 F. App'x 232, 235 (3d Cir. 2011) (*per curiam*) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable").

### E

Verticelli appears to assert retaliation claims based on allegations that unnamed DOC staff members confiscated and discarded his mail after he filed a grievance against Lt. Randall. To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). A prisoner's filing of a grievance constitutes constitutionally protected conduct. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *Id.*

Verticelli's claims about his mail being discarded are not linked to any of the Defendants. *See Rode*, 845 F.2d at 1207; *see also Iwanicki v. Pa. Dep't of Corr.*, 582 F. App'x 75, 79 (3d Cir. 2014) (*per curiam*) ("[M]ere notification of a grievance does not allege sufficient personal involvement because it does not establish that the Defendants personally directed or acquiesced in the retaliation."). Moreover, Verticelli does not allege when his mail was taken in relation to when the grievance was filed. Absent

additional factual allegations, Verticelli is unable to state a plausible retaliation claim. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)).

IV

For the foregoing reasons, the Court will grant Verticelli leave to proceed *in forma pauperis* and dismiss his Complaint in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Verticelli's claims against the DOC and his Fourteenth Amendment due process claims will be dismissed with prejudice. His First Amendment retaliation and Eighth Amendment denial of mental healthcare claims will be dismissed without prejudice. Verticelli's Eighth Amendment excessive force claims and state law assault and battery claims pass statutory screening and may proceed to service. In addition, Verticelli's requests for declaratory and injunctive relief will be denied.[6] The Court will permit Verticelli an opportunity to file an amended complaint in the event he can cure the defects the Court has noted as to his claims that were dismissed without prejudice. In the alternative, Verticelli may elect to proceed

---

[6] Verticelli asks the Court for a declaration that Defendants violated his constitutional rights and for an injunction ordering Defendants to evaluate and treat his brain tumor. (Compl. at 8.) Both requests are improper. Verticelli's claim for declaratory relief will be denied because it merely seeks to adjudicate past conduct. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) (noting that a "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct," and is also not "meant simply to proclaim that one party is liable to another"); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."). His request for injunctive relief will be denied because it does not relate to the claims in the Complaint. *Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010) (*per curiam*); *James v. Varano*, No. 14-01951, 2017 WL 895569, at *3 (M.D. Pa. Mar. 7, 2017) (stating that "there must be a connection between the underlying complaint and the relief requested in the motion for a preliminary injunction").

with his Eighth Amendment excessive force claims and state law assault and battery claims.

An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**Gerald J. Pappert, J.**