# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER VERTICELLI, : | |
| *Plaintiff*, : | |
| : | |
| v. : | CIVIL ACTION NO. 25-CV-1463 |
| : | |
| COMMONWEALTH OF : | |
| PENNSYLVANIA, DEPARTMENT OF : | |
| CORRECTIONS, *et al.* : | |
| *Defendants*. : | |

## **MEMORANDUM**

**Pappert, J.**                                                                                                                 **October 6, 2025**

      *Pro se* Plaintiff Christopher Verticelli, an inmate at SCI Phoenix, asserts constitutional claims pursuant to 42 U.S.C. § 1983 and associated state law claims in connection with an alleged assault by a corrections officer and the subsequent denial of medical care. Verticelli was previously granted leave to proceed *in forma pauperis*. Upon screening under 28 U.S.C. § 1915(e)(2), the Court dismissed his Complaint, in part without prejudice, and permitted him to file an amended complaint. *See Verticelli v. Dep't of Corr.*, No. 25-1463, 2025 WL 1426082, at *6 (E.D. Pa. May 15, 2025). Verticelli filed the pending Amended Complaint, which for the following reasons the Court dismisses in part. Verticelli may file a second amended complaint if he believes he can cure the defects in the claims that were dismissed without prejudice, or in the alternative, he may proceed with his excessive force and assault and battery claims against Lt. Randall that pass statutory screening.

I[1]

During the "morning count" on August 3, 2023, Randall entered Verticelli's cell to speak to his cellmate and then pointed his finger in Verticelli's face while "yelling and screaming" at him. (Am. Compl. at 3.) When Verticelli "respectfully" asked Randall to stop, Randall responded, "let's go," grabbed Verticelli by his arms, and punched him in the chest. (*Id*.) As Randall forcibly pulled Verticelli onto the housing unit, Verticelli explained that he suffered from "severe disabilities," uses a cane to walk, and has a brain tumor. (*Id*. at 3, 7.) Randall disregarded Verticelli's pleas. (*Id*.) Randall then pushed Verticelli so hard that Verticelli fell and hit his head and back, causing Verticelli lose consciousness. (*Id*. at 3.) When he came to, he was being dragged by Randall down the tier and was not able to stand. (*Id*.)

Verticelli suffered injuries from the assault and was transported to an emergency room outside of the prison. (*Id*. at 4, 7.) He states that the Department of Corrections and its medical provider denied him "medical treatment" on the day of the "assault" and for "several months" afterward. (*Id*. at 4.) Verticelli further states that he made numerous "mental health requests" and "medical requests," but that the requests "went unanswered." (*Id*. at 4, 7.) Based on these allegations, Verticelli asserts § 1983 claims for excessive force, retaliation, and deliberate indifference to medical needs, and state law claims for negligence and assault and battery.[2] (*Id*. at 8-11.) In

---

[1] The factual allegations set forth in this Memorandum are taken from Verticelli's Amended Complaint. (*See* ECF No. 14.) The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

[2] Verticelli alleged similar facts in his initial Complaint. In its May 15, 2025 Memorandum, the Court dismissed with prejudice Verticelli's § 1983 claims against the DOC and his Fourteenth Amendment due process claims. *Verticelli*, 2025 WL 1426082, at *6. The Court also dismissed without prejudice Verticelli's First Amendment retaliation

addition to Randall, Verticelli names as Defendants the DOC, SCI Phoenix Superintendent Terra, SCI Phoenix Deputy Superintendent Sipple, SCI Phoenix mental healthcare provider Centurion, SCI Phoenix medical healthcare provider Wellpath, and Wellpath Medical Director Dr. Letizio.  (*Id*. at 5-6.)  For relief, Verticelli requests money damages, including for future medical bills.  (*Id*. at 12.)

II

As Verticelli is proceeding *pro se*, 28 U.S.C. § 1915(e)(2)(B) applies, which requires the Court to dismiss the Amended Complaint if, among other things, it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S.  678 (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* amended complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the amended complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.  As Verticelli is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8

---

claims and his Eighth Amendment denial of mental healthcare claims, and provided him an opportunity to amend. *Id*.  Finally, the Court concluded that Verticelli's Eighth Amendment and assault and battery claims against Randall and his supervisory claims against Superintendent Terra passed statutory screening and could proceed to service. *Id*.

F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). Additionally, a court is obligated to dismiss any claims seeking monetary relief from an immune defendant. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

III

Verticelli again asserts constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

A

Verticelli asserts a negligence claim against the DOC. The Court previously dismissed Verticelli's § 1983 claims against the DOC as barred by Eleventh Amendment sovereign immunity. *See Verticelli*, 2025 WL 1426082, at *3. In his Amended Complaint, Verticelli states that his negligence claims against the DOC are not barred by sovereign immunity because the Commonwealth has waived immunity for claims involving its real estate, including its correctional facilities. He alleges that the DOC failed "to properly conduct and or train their staff" and "failed to maintain" SCI Phoenix "in a reasonabl[y] safe condition," which resulted in him being "severely assaulted." (Am. Compl. at 8.)

4

The Eleventh Amendment bars suits against a state and its agencies, including the DOC, that seek monetary damages. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Pennsylvania's Sovereign Immunity statute provides that "the Commonwealth and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Const. Stat. Ann. § 2310. The General Assembly has specifically waived sovereign immunity in nine areas, including cases involving a "dangerous condition of Commonwealth agency real estate and sidewalks." 42 Pa. Cons. Stat. Ann. § 8522(b)(4). The real estate exception to sovereign immunity, however, does not apply to Verticelli's claims. It applies where a plaintiff's injuries are caused by a defect in the land itself and not where the land "merely facilitates injury by the acts of others." *Cowell v. Com., Dep't of Transp.*, 883 A.2d 705, 709 (Pa. Commw. Ct. 2005); *Mascaro v. Youth Study Ctr.*, 523 A.2d 1118, 1124 (Pa. 1987) (concluding that real estate exception to sovereign immunity did not apply to negligence claim against juvenile detention center after detainee escaped and caused injuries); *id.* ("The real estate exception, however, has consistently been held to be unavailable to those whose claim of negligence consists of a failure to supervise the conduct of students or persons adequately."). Verticelli's negligence claim is based on allegations that he was assaulted by Randall due to the DOC's failure to properly supervise or train its prison officials. His claim and the alleged resulting injuries were not caused by a defect in SCI Phoenix's land or sidewalks. The real estate

waiver exception does not apply and Verticelli's negligence claims asserted against the DOC are barred by sovereign immunity and are dismissed with prejudice.

B

Verticelli again asserts Eighth Amendment excessive force and assault and battery claims against Randall. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment." *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the prisoner has plausibly alleged that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7).

Verticelli has again stated a sufficient basis to proceed with his excessive force and assault and battery claims against Randall. He alleges that when he asked Randall to stop pointing in his face, Randall punched him in the chest, pushed him so hard that he fell and hit his head, and dragged him down the cell block. Verticelli further alleges that Randall's actions caused him to suffer injuries and require medical attention. Verticelli's excessive force and assault and battery claims again pass statutory screening.[3]

---

[3] In his original Complaint, Verticelli asserted an Eighth Amendment supervisory liability claim against Superintendent Terra based on allegations that Terra specifically knew about Randall's proclivity toward violence against inmates and nevertheless failed to prevent Randall's assault on Verticelli. The Court concluded that this claim could also

6

C

Verticelli asserts Eighth Amendment denial of healthcare claims against Superintendent Terra, Deputy Superintendent Sipple, and Dr. Letizio. To state a claim based on the failure to provide medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference claims can be based on the failure to provide adequate mental health services. *DeJesus v. Delaware through Del. Dep't of Corr.*, 833 F. App'x 936, 940 (3d Cir. 2020) (citing *Palakovic v. Wetzel*, 854 F.3d 209, 227-29, 231-32 (3d Cir. 2017)); *see also Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979) (deliberate indifference is actionable "when inmates with

---

proceed to service. *See Verticelli*, 2025 WL 1426082, at *3. However, Verticelli did not include an Eighth Amendment claim against Terra in his Amended Complaint regarding the assault by Randall. Nor does Verticelli mention in the Amended Complaint an established "pattern of physical abuse of inmates" by Randall or Terra's knowledge of that pattern. In other words, Verticelli omitted this claim from his Amended Complaint so it is not currently part of this case.

serious mental ills are effectively prevented from being diagnosed and treated by qualified professionals").

     Verticelli has not stated a plausible Eighth Amendment denial of healthcare claim against any defendant. He states in a vague and conclusory manner that he made numerous sick call requests, including to Dr. Letizio, but that his requests were either "refused" or not "properly answered." (Am. Compl. at 4, 7.) He further states that he notified Sipple and Terra "regarding the ongoing medical and mental health issues" but that "no one from the [DOC] did anything to assist" and "continued to look the other way while [Verticelli] suffered further injuries." (*Id*. at 7.) Verticelli's vague and conclusory allegations are not sufficient. *See Iqbal*, 556 U.S. at 678. Except for the injuries he suffered in response to Randall's use of force—for which Verticelli alleges he received medical treatment—Verticelli does not describe any subsequent medical or mental healthcare need for which he requested assistance. Although Verticelli states that he has severe disabilities and a brain tumor, it is not clear that his requests for medical assistance had anything to do with these medical issues. Moreover, Verticelli does not allege facts about when and how he made medical care requests, to whom the requests were made, and how they were not "properly answered." Even assuming Verticelli's medical needs were serious, the allegations do not support a reasonable inference that Terra, Sipple, or Letizio were deliberately indifferent to those needs. Nor is there any factual basis for a supervisory liability claim against these defendants.[4] The Court dismisses Verticelli's Eighth Amendment denial of medical care claims.

---

[4] There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she, "'with deliberate indifference to the

Verticelli also asserts First Amendment retaliation claims against Terra, Sipple, and Dr. Letizio.  To state a plausible First Amendment retaliation claim, a prisoner must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  A prisoner's filing of a grievance constitutes constitutionally protected conduct.  *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).  The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation.  *Id*.

Verticelli also fails to state a plausible First Amendment retaliation claim.  He alleges that he engaged in protected activities by submitting "request to staff slips, medical sick call requests, grievances, and outside private complaints" and that defendants retaliated against him by refusing to respond to his grievances and requests and refusing to provide him the medical care he requested.  (Am. Compl. 11-12.)  Although the submission of grievances is a protected activity, "[t]he denial of grievances is not an 'adverse action' for retaliation purposes."  *Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (*per curiam*) (affirming dismissal of First Amendment

---

consequences, established and maintained a policy, practice or custom, which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*  "Failure to" claims, such as a failure to train, failure to discipline, or failure to supervise, are generally considered a subcategory of policy or practice liability.  *Id.* at 316-17.

9

retaliation claim where claim was based on argument that prison officials denied grievances as retaliation for filing those grievances); *see also Burgos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("The mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights."), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (*per curiam*). In any event, Verticelli has not alleged specific facts that would support his allegation that any defendant acted with a retaliatory motive. The Court thus also dismisses Verticelli's First Amendment retaliation claims.

### D

Verticelli again names prison mental healthcare provider Centurion as a defendant in his Amended Complaint. He also names prison medical provider Wellpath, which was not named in his original Complaint. To plead a § 1983 claim against a prison medical provider such as Centurion or Wellpath, a plaintiff must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (*per curiam*) (stating that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability'"); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or

policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and quotations omitted)). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or a custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id*. (quoting *Bielevicz*, 915 F.2d at 850).

Verticelli's claims against Centurion and Wellpath must also be dismissed. Nothing in the Complaint suggests that Verticelli's inability to obtain medical and mental healthcare services resulted from a Centurion or Wellpath policy or custom. Instead, Verticelli alleges in conclusory terms and without any factual support that defendants "have adopted . . . policies and practices that govern the delivery and the withholding of medical and mental healthcare services," and that his injuries were the "direct result" of those policies and practices. (Am. Compl. at 9.) Allegations such as these, which simply paraphrase the legal standard, are too vague and generalized to support a plausible claim against a medical provider. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim); *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) ("These conclusory allegations, which merely parrot the standard of liability, are insufficient to state a claim for § 1983 liability"), *aff'd*, 756 F. App'x 165 (3d Cir. 2018) (*per curiam*). Moreover, as explained

previously, *see* infra at § III.C, Verticelli does not state a plausible claim with respect to the denial of medical or mental healthcare. Because there is no underlying constitutional violation, there can be no associated liability against the medical provider. *See Dwight v. Krasner*, No. 24-2513, 2025 WL 1361285, at *7 (E.D. Pa. May 9, 2025) (concluding that claim against prison medical provider was not plausible in part because the plaintiff failed to allege underlying deliberate indifference claims against the medical staff); *see also Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.").[5]

IV

For the foregoing reasons, the Court dismisses Verticelli's Amended Complaint in part. His claims against the DOC are dismissed without leave to amend because amendment of these claims would be futile. Verticelli's Eighth Amendment excessive force claims and state law assault and battery claims asserted against Randall pass

---

[5] While the claim against Wellpath is dismissed without prejudice, any liability against Wellpath in this Court is uncertain in light of Wellpath's discharge from liability by the United States Bankruptcy Court for the Southern District of Texas, Houston Division, for claims that arose prior to November 11, 2024. *See In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tx.) (Bankr. Doc. Nos. 2596, 2679, 2680)); *see also* 11 U.S.C. § 524(a)(2) ("A discharge in a [Chapter 11 bankruptcy] case . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.").

Moreover, claims against Wellpath employees, such as Dr. Letizio, may also be affected by Wellpath's bankruptcy. In particular, absent any information that Verticelli has opted out of the Third-Party Releases or otherwise taken action in the Bankruptcy Court, the claims against Dr. Letizio or any other Wellpath employee may be barred by the injunction contained in the confirmed Chapter 11 Plan. *See* Ch. 11 Plan, Art. IX, *In re Wellpath*, No. 24-90533, ECF No. 2596 at 128-136; *see also* 11 U.S.C. §§ 524(a); 1123(b)(6); 1141(a), (d). However, the Court will not decide issues related to the impact of the bankruptcy at this time.

statutory screening and may proceed to service. The balance of the Amended Complaint is dismissed without prejudice. The Court will permit Verticelli one last opportunity to file an amended complaint in the event he can cure the defects as to his dismissed claims, apart from those against the DOC. In the alternative, Verticelli may elect to proceed with his Eighth Amendment excessive force claims and state law assault and battery claims against Randall.

An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**